## Burke v. Fischer.

September 26, 1944.

158

Keenon and Odear for appellant.
Yancey and Martin for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellee, plaintiff below, sought to recover damages occasioned by having been bitten by a dog owned by Burke. He asked $2,000 for pain and anguish; $280 for loss of time from his business, $68 for injured clothing and $15 medical bills. It was charged that Burke harbored on his premises a vicious dog whose characteristics were well know to him, and the dog injured him at a time when he was an invitee, or at least a licensee on Burke's garden truck farm.

Appellant Burke in answer, after denial, plead contributory negligence, assumed risk on the part of Fischer. Following proof and instructions the jury found for the plaintiff in the sum of $655. Appellant is here contending that the court erred (1) in overruling motion for directed verdict; (2) in the giving of some and refusing other instructions tendered by defendant; (3) in admitting incompetent testimony.

Appellee operated a lunch room in Lexington, and had been at times buying vegetables from appellant "on the truck and on the farm." Fischer said that the morning of September 24, 1942, the day of the assault, he bought vegetables from Burke, and inquired if he had any tomatoes, and Burke replied that he had some on the farm. Appellee then said "I'll be out and get them." He said that he had previously been to the farm several times for vegetables. That afternoon he and his wife drove to the farm, and into the driveway leading to the vegetable shed. They saw no one; Fischer got out of the car and walked a few feet to the shed and found no person there. He came out and told his wife to blow the automobile horn. She did so, and the dog appeared suddenly; jumped at his throat and in

an effort to ward him off Fischer was bitten on the hand and on both legs, and his clothing was torn. He said that on his former visits to the farm he had never seen a dog on the premises; did not know of the presence of a dog, and had not seen the "bad dog" signs, one of which was on a post a few feet from the vegetable shed. Mrs. Fischer corroborated appellee.

Burke owned and operated the garden farm of about 65 acres, two miles north of Lexington. He said that he was bothered by tramps, due to the fact that his farm was on the highway, and a line of the Southern Railroad. The dog was a shepherd about three and a half years old, and according to Burke was kept on the place for protection of his property, his wife and children, when he was away from home or at work on the place. He admitted that the dog had bit several persons while on the place. It was admitted that he knew the dog was vicious, Burke saying, "He lets some of the family know when strangers are coming, and if they come on the place when he don't see any of the family he will attack them. He will attack people if they come on the place and none of the family is present. When members of the family are present he is easily controlled." Since this admission was frankly made it is not necessary to review the testimony of those persons who were bitten by the dog. There was other evidence on behalf of appellant with respect to the "bad dog" signs. Witnesses testified that they had seen the sign on the front gate; some were uncertain as to having seen the one on the shed near where Mrs. Fischer parked the car just before the attack by the dog.

The law with respect to liability of one who keeps a vicious dog which attacks a person coming onto the permises is no new subject. It is agreed that there is no statute now controlling the subject of liability, and that the common law prevails. See Brown v. Weathers, 247 Ky. 306, 57 S.W. 2d 4; Turner v. Shroshpire, 285 Ky. 256, 147, S. W. 2d 388; Fowler v. Helck, 278 Ky. 361, 128 S.W. 2d 564. Under common law, as will be noted, negligence or the lack of care in restraining a known vicious dog need not be proven. The rule is that if one knowingly keeps a vicious dog, which is accustomed to attack persons, he is prima facie liable for injuries done by it. The gist of the action is in the keeping of the animal with knowledge of its vicious disposition. When an animal not naturally dangerous to persons has been

found by the owner to be and is in fact vicious, it passes into the wild animal class, and the owner harbors him at his peril, in respect of persons who are lawfully upon the premises. Brown case, supra; Turner v. Shropshire, 285 Ky. 256, 147 S.W. 2d 388.

We take up first the contention that error was committed by allowing the asking of a question which the court had theretofore held to be incompetent. When Burke was testifying, after admitting that he knew the dog had bitten two or three persons prior to the attack on Fischer, he was asked if the dog had not bitten one Weinniger in October of the same year. The court sustained objection. Later Weinniger went on the stand and testified that he was on the farm in October 1942, and was asked, "What happened to you?" The court promptly sustained objection, nevertheless appellant moved the court to discharge the jury on the ground that the question was asked solely for the purpose of prejudicing the jury. The court correctly overruled the motion. Since Burke had admitted that he knew the dog was vicious, and had bitten at least two persons before the attack on Fischer, we fail to see how the asking of the question could have been substantially prejudicial.

Counsel's objections to the instructions given are not well taken. It is argued that since it was admitted by Burke that the dog was vicious and had bitten Fischer, the instructions amounted to almost a peremptory to find for appellee. This is true, but it is difficult to see how any other instruction was authorized under the facts and the law of the case. Reference to Stanley's Instructions to Juries, p. 69, sec. 70 will show that aside from substitution of names and dates the instructions on liability follow those given in Brown v. Weathers, supra, later in Turner v. Shropshire, supra.

Complaint is made of instruction No. 3, which fixed the measure of damages. Aside from that portion which allowed recovery, within the limit fixed by the pleading for pain and suffering, the court instructed the jury to find for loss of time and medical bills within the limits. The contention is that Fischer did not prove that he had expended anything like $280 to have some one take his place during the two months he was unable to work, about two or three weeks of which he was under observation by the physician, who was guarding against

possibility of rabies. It is true that Fischer only went to the extent of saying that he had to pay his regular helper a little extra. Appellant's contention is that since the proof did not show expenditures, the court should not have included the "$280 for loss of time," in the instruction. Citing Consolidated Coach Corp. v. Eckler, 248 Ky. 309, 58 S.W. 2d 582. We are unable to say that any certain portion of the judgment which awarded a lump sum was for the "amount paid by appellee to a man to take his place at the rate of $35 per week." The court did not instruct the jury to reimburse Fischer; the jury was told that they might conpensate him for his loss of time from his business, and we note that his pleading was in the alternative, asking for compensation for loss of time, or an amount paid for a substitute. The instruction as given was authorized by the principles clearly stated in Chesapeake & O. R. Co. v. Shanks, 260 Ky. 416, 86 S.W. 2d 128. If the award was for loss of time, then damage for the injury, the pain and suffering, may be looked upon as extremely reasonable.

It is vigorously argued that the court should have given several instructions tendered by defendant, they embodying the defense of contributory negligence or assumed risk. It is argued that Fischer was a trespasser, and that having seen the sign, or by the lack of ordinary care in failing to observe it, he assumed the risk of driving to and going into the shed.

It may be true as argued, that when Fischer saw Burke on the morning of the 24th he did not invite Fischer to come to the farm that day. This was in slight dispute. Fischer in any event was a licensee. Burke had admitted that the dog had bitten other persons who came to the farm on business. He admitted the custom was for persons, in addition to ordering by phone, to come to the place and buy vegetables. To all intents and purposes this was a place of public business to which persons came, perhaps infrequently, to purchase vegetables for sale by Burke. Under these circumstances Fischer was on the place not as a trespasser. He had the right to go onto the place for a legitimate purpose, and he had a right to believe, regardless of the sign or signs, that members of the public would be afforded protection from a well-known vicious dog.

The rule generally is that there is no liability where a wrongful act of the injured person contributed to the injury. Even where warning signs are posted on the place, the owner of the known bad dog is not to be exempted from liability to one who is rightfully on the premises. If, however, a person with knowledge of the propensities of the dog, wantonly excites him, or voluntarily and unnecessarily places himself in position to be attacked, he will be held to have brought on the injury and ought not to be entitled to recover. "The correct rule of liability therefore seems to be that the owner cannot be relieved from it by any act of the person injured, unless it be one from which it can be affirmed that he caused the injury himself, with a full knowledge of its probable consequences." 2 Am. Jur. 743, sec. 67; Wooldridge v. White, 105 Ky. 247, 48 S.W. 1081; Bush v. Wathen, 104 Ky. 548, 47 S.W. 599. In dealing with the subject of harm caused by vicious animals, Restatement of the Law, Torts, Vol. 2, Sec. 484, states that "a plaintiff is barred from recovery if he intentionally and unreasonably puts himself or remains within reach of such an animal known by him to be dangerous." Comment (C); "While a plaintiff is not barred * * * by his casual negligence, he may be barred, if knowing of the presence of the animal and its dangerous character, he intentionally and unnecessarily, and thus unreasonably either puts himself or remains within the animal's reach, * * * he is barred by that form of negligence often called 'voluntary assumption of risk.' "

On the whole case we are of the opinion that appellant's substanital rights were not prejudiced by any of the alleged errors, hence the judgment is affirmed.