**CATERPILLAR, INC., Appellant,**

v.

**Gary W. BROCK, Appellee.**

**No. 95–SC–426–CL.**

Supreme Court of Kentucky.

Feb. 22, 1996.

Leslie W. Morris, II, Lexington, William F. Maready, Robinson, Maready, Lawing & Comerford, Winston–Salem, North Carolina, Joel D. Zakem, Labor Cabinet–Special Fund, Louisville, for Appellant.

Asa P. Gullett, Gullett & Combs, Hazard, Phyllis L. Robinson, Hyden, for Appellee.

Robert E. Sanders, The Charles H. Fisk House, Covington, Amicus Curiae.

REYNOLDS, Justice.

The United States Court of Appeals for the Sixth Circuit has requested certification of the law as to the following question:

DID KENTUCKY REVISED STATUTE 411.182(1) NEGATE AND/OR OVERRULE KENTUCKY REVISED STATUTE 411.320(1)?

We hold the question which has been certified is answered in the affirmative. KRS 411.182(1) negated KRS 411.320(1).

The basis of the challenge arises from the following statement of facts and nature of the case.

Brock is a long-time bulldozer operator for Nally & Hamilton ("N & H"), a reclamation company doing work in coal mining areas in mountainous Harlan County, Kentucky. In June of 1990, plaintiff began work on a "high wall" where strip mining had taken place. Brock normally operated a Caterpillar model D8L bulldozer, but on this particular day, N & H assigned him a model D9H, which Caterpillar also manufactured in 1978. While Great Western Coal Company ("Great Western") owned this particular bulldozer, N & H borrowed it on the day in question because it was already located at the work site. In order to reach the top of the fill, Brock had to push dirt up an access road near the top of the mountain. The slope was approximately a two-to-one grade, an angle of about 27 degrees. Brock testified that as he proceeded up the access road the bulldozer suddenly lost its prime or hydraulic fluid pressure,

which caused the bulldozer to lose its braking power on this slope. Brock attempted to slow the bulldozer's precipitate backward fall by dragging its blade and manually applying the brakes. As the bulldozer spun out of control, it left the access road, twisted sideways, and tumbled down the reclaimed high wall, throwing Brock from the cab of the vehicle. Brock allegedly suffered various physical and mental injuries.

In 1991, Brock, a citizen of Kentucky, brought a timely diversity action against Caterpillar, an Illinois corporation, alleging that Caterpillar defectively designed the braking system on the D9H bulldozer and that the defective design made the product unreasonably dangerous. Brock further alleged that the defective design was the proximate cause of his injuries. After Brock filed his complaint, Old Republic Insurance Company ("Old Republic"), the workers' compensation carrier for N & H, intervened as a plaintiff, asserting a claim for recovery of the cost of medical attention and other benefits already dispersed to Brock. The Trustee for the workers' compensation Special Fund also intervened as a plaintiff, seeking the recovery of any benefits paid to Brock. The two intervening plaintiffs did not actively participate in the trial nor are they participating in this appeal. In addition, Caterpillar brought a third-party claim against Great Western, claiming that, if the accident occurred as Brock alleged, Great Western was responsible because it failed to observe routine care and maintenance of the bulldozer. The magistrate judge dismissed Great Western on the basis of its postbankruptcy discharge and stay. The parties agreed, however, that should the evidence warrant, Great Western would be included in the jury's apportionment of fault.

Before trial, Caterpillar requested an instruction from the court advising the jury that if it found that any other party performed an unauthorized alteration or modification of the D9H, it must return a verdict for Caterpillar. Furthermore, Caterpillar asked the magistrate judge to instruct the jury that an unauthorized alteration or modification includes the failure of the owner or operator to observe routine maintenance and care. The magistrate judge, however, declined to give Caterpillar's proffered instructions. He found that there was insufficient evidence for the jury to conclude that Great Western or N & H altered or modified the bulldozer by means of inadequate maintenance and care. The magistrate judge instructed the jury instead that it could apportion fault between Caterpillar, Great Western, N & H, and Brock if it found that any of those parties' conduct was a "substantial cause" of Brock's injuries. The magistrate judge submitted the following interrogatories to the jury, with the jury's responses:

*Interrogatory 1:* Are you satisfied from a preponderance of the evidence that at the time Caterpillar sold the D9H bulldozer in 1978, the braking system was in a defective condition that created such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of bulldozers, being fully aware of the risk, would not have put it on the market?
ANSWER: __X__ YES _____ NO

*Interrogatory 2:* Are you satisfied from a preponderance of the evidence that the defective condition was a substantial cause of the accident and the plaintiff's injuries?
ANSWER __X__ YES _____ NO

*Interrogatory 3:* Are you satisfied from a preponderance of the evidence that Great Western Coal Inc. failed to use ordinary care to properly inspect, maintain, and service the D9H bulldozer in question, and that such failure was a substantial cause of the accident and the Plaintiff's injuries?
ANSWER __X__ YES _____ NO

Whether you have answered "Yes" or "No" to Interrogatory 3, you shall proceed to Interrogatory 4.

*Interrogatory 4:* Are you satisfied from a preponderance of the evidence that Nally & Hamilton failed to use ordinary care to provide a safe working environment for the Plaintiff, which in this action not only included inspection, maintenance, and service of the D9H bulldozer in question, but proper instruction and training regarding the use of the D9H bulldozer as well, and

that such failure was a substantial cause of the accident and the Plaintiff's injuries?

ANSWER ___X___ YES _____ NO

Whether you have answered "Yes" or "No" to Interrogatory 4, you shall proceed to Interrogatory 5.

*Interrogatory 5:* Are you satisfied from a preponderance of the evidence that the Plaintiff failed to use ordinary care for his own safety in the operation of the D9H bulldozer in question, and that such failure was a substantial cause of the accident and the Plaintiff's injuries?

ANSWER ___X___ YES _____ NO

Whether you have answered "Yes" or "No" to Interrogatory 5, you shall proceed to Interrogatory 6.

The jury declined to award punitive damages but found compensatory damages of $950,000 and apportioned fault as follows: 60% against Caterpillar, 20% against Great Western, and 15% against N & H. The jury also assigned 5% fault to plaintiff Brock. Accordingly, the magistrate entered a $570,-000 judgment against Caterpillar.

 Repeal by implication finds no favor within the courts. However, we conclude the two statutes may not be completely harmonized without doing violence or creating exceptions within either. *Ex Parte Lawrence,* 204 Ky. 568, 265 S.W. 287 (1924); *City of Henderson v. Connell,* 156 Ky. 730, 161 S.W. 1121 (1914).

The development of comparative fault has impetus by judicial fiat pronounced in *Hilen v. Hays,* Ky., 673 S.W.2d 713, 720 (1984). However, the comparative fault rule was initially determined inapplicable to products liability litigation. *Reda Pump Co., A Div. of TRW, Inc. v. Finck,* Ky., 713 S.W.2d 818 (1986). However, at the following legislative session, the Kentucky legislature enacted the comparative fault statute, KRS 411.182 (effective July 15, 1988) and specifically drafted a provision to include products liability actions. *Ingersoll–Rand Co. v. Rice,* Ky.App., 775 S.W.2d 924 (1988). The proposed apportionment statute is adverse to the purpose of the products liability statute to such an extent that the apportionment statute negates the products liability statute enunciated in KRS 411.320(1).

The language of the comparative fault statute, KRS 411.182, is straightforward and admits, with ease, to only one construction: that in all tort actions, including products liability actions, fault is to be apportioned among all parties to each claim. The chosen language of the legislature is plain and direct rather than circumferential. The date of enactment and the legislative history intone negation of KRS 411.320(1).

Demonstratively, by implication, KRS 411.182(1) has repealed KRS 411.320(1), and this result exemplifies the concept of fundamental fairness enunciated in *Hilen v. Hays, supra.*

The law is so certified.

STEPHENS, C.J., GRAVES, LAMBERT, REYNOLDS, STUMBO and WINTERSHEIMER, JJ., and EDWIN I. BAER, Special Justice, sitting.

All concur.

Prior to his death on January 27, 1996, REYNOLDS, J., wrote the majority opinion herein. Rendition was delayed only by normal administrative procedures.